UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BONNIE C. ADAMS,

                Plaintiff,         Civil Action No. 13-11132
                                          Honorable John Corbett O'Meara
                                          Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [15, 19]

Plaintiff Bonnie C. Adams ("Adams") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [15, 19], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

I.        RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Adams is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [19] be GRANTED, Adams' Motion for Summary Judgment [15] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the Commissioner's decision be AFFIRMED.

**II.     REPORT**

    **A.     Procedural History**

On February 8, 2012, Adams filed applications for DIB and SSI, alleging disability beginning on July 15, 2010. (Tr. 169-81). Her claims were denied initially on April 23, 2012. (Tr. 92-99). Thereafter, Adams filed a timely request for an administrative hearing, which was held on November 13, 2012, before ALJ Curt Marceille. (Tr. 44-63). Adams (represented by attorney Gregory Bringard) testified at the hearing, as did vocational expert ("VE") Jane Beougher. (*Id.*). On December 10, 2012, the ALJ issued a written decision finding that Adams is not disabled. (Tr. 25-39). On February 28, 2013, the Appeals Council denied review. (Tr. 1-4). Adams filed for judicial review of the final decision on March 14, 2013. (Doc. #1).

    **B.     Background**

        *1.     Disability Reports*

In an undated disability report, Adams indicated that her ability to work is limited by back problems, bipolar disorder, learning disabilities, migraines, and being "chemically unbalanced." (Tr. 208). According to Adams, her conditions began bothering her on July 15, 2010; however, she was still working as a cashier at a gas station (six hours per week) at the time of the report. (Tr. 208-09). At that time, she was taking Abilify (to help her sleep), bupropion (for depression), and divalproex and hydroxyzine pamoate (for bipolar disorder). (Tr. 210).

In a function report dated March 4, 2012, Adams reported that she lives in a "garage" with family. (Tr. 239). When asked to describe her daily activities, Adams indicated only that she does laundry and watches television. (Tr. 240). Her conditions affect her sleep, as she cannot lie on her back for too long. (*Id.*). She has some difficulty with personal care (shaving, putting on shoes), and she must take showers instead of baths. (*Id.*). She indicated that she needs reminders to take medication. (Tr. 241). Adams is able to prepare simple meals

2

(sandwiches, frozen pizza, etc.) on a daily basis, although she cannot stand for long periods of time. (*Id.*). She is able to do some household chores, drive, and go shopping for food. (Tr. 241-42). She is able to pay bills and handle a savings account, but she claims she cannot count change and has never used a checking account. (*Id.*). Her hobbies include watching television and listening to music, although she cannot sit for too long and has difficulty focusing on the television or radio at times. (Tr. 243). She spends time with others on a weekly basis and regularly leaves home for doctors' appointments and to visit family. (*Id.*).

When asked to identify functions impacted by her condition, Adams checked lifting, squatting, bending, standing, walking, sitting, memory, completing tasks, concentration, understanding, following instructions, and getting along with others. (Tr. 244). She can walk 1.5 blocks before she needs to stop and rest for twenty minutes. (*Id.*). She does not finish what she starts, and has trouble following written instructions. (*Id.*). She gets angry and frustrated with "certain authority figures" but has never been fired from a job because of problems getting along with people. (Tr. 245).[1]

2. *Hearing Testimony*

At the time of the November 13, 2012 hearing before the ALJ, Adams was thirty-nine years old. (Tr. 47). She testified that she was 5'8" tall and weighed 216 pounds. (Tr. 61). Adams completed the eighth grade (taking special education classes), but dropped out of school in ninth grade. (Tr. 50). According to Adams, she is able to read at only the second or third grade level. (Tr. 59). Adams testified that she is "[b]asically … homeless" and has been living in her mother's garage. (Tr. 55).

At the time of the hearing, Adams was working one day per week (for six hours) as a

---

[1] In a third party function report dated March 4, 2012, Adams' sister, Rebecca Adams, generally corroborated Adams' statements. (Tr. 227-34).

3

cashier at a gas station. (Tr. 48). She testified that she can work no more than that because of her back pain. (*Id.*). However, at the time of the hearing, Adams was not taking any medication for back pain; she testified that she could not afford to purchase even over-the-counter ibuprofen. (Tr. 48-49). Adams can lift no more than fifteen pounds, cannot bend or crouch without pain, and has difficulty standing for her entire six-hour shift. (Tr. 50-51, 58). Adams also testified that she has difficulty performing her cashier job from a mental perspective; she is "not a happy camper" when she has to work, and she has difficulty dealing with the public. (Tr. 51).

Adams also testified that she has a history of seizures and takes Depakote as a preventative measure. (Tr. 51). However, she has had only four or five seizures in the past few years, and her last one was approximately four months before the hearing. (Tr. 51-52). She is able to drive (although she does not have a car), shop, and run errands. (Tr. 56-57).

### 3. *Medical Evidence*

Although the ALJ found that Adams suffers from both physical and mental impairments, Adams cited facts and raised arguments to this Court pertaining only to her physical impairments. Thus, although the Court will discuss some records pertaining to Adams' mental impairments, it will focus primarily on evidence relating to her physical impairments.

On September 10, 2008, after complaining to her primary care provider (Dr. Afonso Ferreira) of lower back pain that radiated into her hips, Adams underwent a lumbar spine MRI. (Tr. 352, 356). The MRI showed degenerative disc disease at L4-5 and L5-S1 with small posterior annular tears at both levels. (Tr. 352). There was a tiny superimposed central disc protrusion at L5-S1 without significant mass effect or central canal stenosis. (*Id.*). In addition, there was mild neural foraminal encroachment bilaterally at L5-S1 secondary to facet degenerative changes. (*Id.*).

Adams did not return to Dr. Ferreira for lower back pain until August 30, 2012. There

are no treatment notes from Adams' visit to Dr. Ferreira on this date, but he opined that Adams' "chronic back pain," "acute lumbar strain," and "deg arthritis" required no more than a fifteen-pound lifting restriction, and he prescribed nothing stronger than Motrin. (Tr. 367, 369).

In the interim, Adams underwent a consultative physical examination with Dr. Scott Lazzara on April 18, 2012. (Tr. 345-49). Adams reported a history of chronic back pain over the past eight years, but admitted that "she really has not had any treatment for this." (Tr. 345). She was not taking any medication for pain, despite the fact that she claimed her pain occasionally radiated into her hips. (*Id.*). According to Adams, she could sit and stand for twenty minutes, walk about one block, and lift about fifteen pounds. (*Id.*). On examination, Adams had mild difficulty getting on and off the examination table, heel and toe walking, squatting, and standing on either foot. (Tr. 346). She was able to breathe easily, however, despite her obesity. (*Id.*). Her range of motion was in the normal range, her straight leg raising test was negative, and she walked with a normal gait. (Tr. 346-48). Dr. Lazzara did not diagnose Adams with anything other than generalized "back pain" and did not find any active radicular symptoms. (Tr. 349). He opined that, physically, Adams' degree of impairment was "minimal to mild" and her prognosis was fair to good. (*Id.*).

From a mental perspective, Adams sought treatment at Tuscola County Behavioral Health Services beginning in May 2011 after she lost the ability to get her prescriptions filled by Dr. Ferreira. (Tr. 304). At that time, she complained of depression, anxiety, mood swings, and insomnia and said she had been binge drinking alcohol and self-medicating with marijuana. (*Id.*). At her initial psychiatric evaluation on July 5, 2011, Adams was reluctant to admit that drinking or smoking marijuana affected her negatively, and she did not express a desire to cease these behaviors. (Tr. 301-02). She was fully oriented, able to recall three objects after three

5

minutes, and exhibited no more than "mildly decreased" attention/concentration. (Tr. 302). She was diagnosed with bipolar disorder, assigned a Global Assessment of Functioning[2] ("GAF") score of 45-50, and prescribed Depakote and Wellbutrin. (*Id.*). Two months later, Adams reported that she was "doing much better" after agreeing to take Vistaril and Abilify in addition to these medications. (Tr. 317).

Adams next saw her psychiatrist (Dr. Usha Movva) on February 3, 2012. (Tr. 315). At that time, Adams reported "doing fairly well other than having significant financial stress." (*Id.*). In March 2012, Adams again indicated that she was "doing fairly well with medications." (Tr. 405). Two months later, Dr. Movva reported that Adams continued to be doing "fairly well" with only occasional periods of anxiety, insomnia, and thoughts of harming herself. (Tr. 382).

At a visit with her therapist on August 22, 2012, Adams did not explain why she had missed several appointments and, overall, was "very irritable stating she needs to receive disability, that she does not feel like working after arguing all night, and she is tired of dealing with people. She focused on the need to receive disability, that she deserves it because of her back and mood." (Tr. 416). She then missed three more scheduled therapy sessions. (Tr. 413-15). At her most recent outpatient assessment in September 2012, Adams' therapist noted that, since December 2011, she had scheduled twelve appointments but only attended four. (Tr. 389). The therapist further noted that Adams "offers several excuses as to why she cannot attend" and "appears to lack the motivation to change or improve her current living situation." (*Id.*).

### 4. *Vocational Expert's Testimony*

Jane Beougher testified as an independent vocational expert ("VE"). (Tr. 60-63). The

---

[2] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

ALJ asked the VE to imagine a claimant of Adams' age, education, and work experience, who was limited to light work, with the following additional limitations: she can lift no more than fifteen pounds occasionally, less than that frequently; she can occasionally balance, stoop, kneel, crouch, and crawl; she cannot climb ladders, ropes or scaffolds; she cannot work near hazards (unprotected heights, moving machinery); she cannot drive a commercial vehicle; and the work should be simple, routine, repetitive, and involve only occasional decision-making and occasional workplace changes (if any). (Tr. 61-62). The VE testified that the hypothetical individual would be capable of working in the positions of silver wrapper (20,600 jobs in Michigan), tagger (2,000 jobs in Michigan), fruit cutter (300 jobs in Michigan), and stenciler (700 jobs in Michigan). (Tr. 62). The VE then testified that apart from the lifting restriction (fifteen pounds, as opposed to the twenty pound restriction stated in the applicable regulations for "light work" – an issue discussed in detail below), her testimony was consistent with the Dictionary of Occupational Titles. (*Id.*).

  **C.**  **Framework for Disability Determinations**

Under the Act, SSI and DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or

combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps…. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**D.     The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that Adams is not disabled under the Act.  At Step One, the ALJ found that Adams has not engaged in substantial gainful activity since July 15, 2010, the alleged onset date. (Tr. 27).  At Step Two, the ALJ found that Adams has the following severe impairments:  degenerative disc disease; seizure disorder, by history; obesity; unspecified bipolar disorder; and alcohol, marijuana, and nicotine dependence, in reported remission.[3]  (*Id.*).  At Step Three, the ALJ found that Adams' impairments do not

---

[3] The ALJ also found that Adams' history of high triglycerides and treatment of low grade squamous intraepithelial lesions and human papillomavirus are non-severe impairments.  (Tr.

8

meet or medically equal Listings 1.04 (for disorders of the spine), 11.00 (for neurological disorders), 12.04 (for affective disorders), or 12.09 (for substance addiction disorders). (Tr. 28-30).

The ALJ then assessed Adams' residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: she can lift no more than fifteen (rather than twenty) pounds occasionally; she can occasionally balance, stoop, kneel, crouch, and crawl; she cannot climb ladders, ropes or scaffolds; she cannot work near hazards (such as unprotected heights or moving machinery); she cannot drive a commercial vehicle; and the work should be simple, routine, repetitive, and involve only occasional decision-making and occasional workplace changes (if any). (Tr. 30-37). At Step Four, the ALJ determined that Adams has no past relevant work. (Tr. 37). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Adams is capable of performing a significant number of jobs in the national economy and, thus, she is not disabled under the Act. (Tr. 37-38).

E. **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the

---

28). Adams does not challenge these conclusions.

merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### F.  Analysis

In her motion for summary judgment, Adams argues (1) that the ALJ improperly relied

on the VE's testimony; (2) that the ALJ failed to properly consider the effects of her obesity; and (3) that remand is warranted for consideration of new evidence. (Doc. #15 at 7-13). Each of these arguments will be addressed in turn.

### 1. The ALJ Properly Relied on the VE's Testimony

At the hearing, the VE testified that a significant number of jobs exist in the national economy that can be performed by a hypothetical individual with Adams' RFC. (Tr. 60-63). The ALJ asked the VE whether her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. 62). The VE said it was, with the sole exception that she identified jobs that were in the reduced range of light work because they required lifting only a maximum of fifteen pounds (rather than twenty pounds, as is usually the case with light jobs). (*Id.*; 20 C.F.R. § 404.1567(b)). Adams argues that the ALJ's opinion contravenes Social Security Ruling ("SSR") 00-4p because the ALJ purportedly failed to resolve a conflict between the VE's testimony and the DOT. (Doc. #15 at 7-9). This argument is without merit.

SSR 00-4p provides, in relevant part:

> When a VE or VS [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.

*Soc. Sec. Rul.* 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). In other words, "In an effort to insure that such actual or apparent conflicts are addressed, the Social Security Administration has imposed an affirmative duty on ALJs to ask the VE if the evidence that he or she has provided 'conflicts with [the] information provided in the DOT.'" *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009) (citing *Soc. Sec. Rul.* 00-4p, 2000 WL 1898704, at *4). "ALJs must also 'obtain a reasonable explanation for … apparent conflict[s]' if the VE's evidence 'appears to conflict with the DOT.'" *Id.* (internal citations omitted).

11

In this case, the ALJ asked the VE if her testimony was consistent with the DOT. Specifically, after the VE testified that the hypothetical individual could perform the positions of silver wrapper, tagger, fruit cutter, and stenciler, the following exchange took place:

> ALJ: Would all of these jobs allow the 15-pound lifting restriction?
>
> VE: In my opinion, they would.
>
> ALJ: Apart from that weight difference between the *Dictionary of Occupational Titles*, is your testimony consistent with the DOT?
>
> VE: Yes, sir, other than that.

(Tr. 62). Courts have recognized that, "In this Circuit, Social Security Ruling 00-4p is satisfied [] by the ALJ simply asking the VE if his testimony is consistent with the DOT." *Street v. Comm'r of Soc. Sec.*, 2010 WL 1347602, at *7 (E.D. Mich. Mar. 2, 2010) (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 375-76 (6th Cir. 2006)). Here, then, where the ALJ specifically asked the VE if her testimony was consistent with the DOT, this requirement is satisfied.

Moreover, the ALJ obtained from the VE a "reasonable explanation" for any conflict that existed between her testimony and the DOT and then proceeded to resolve that conflict. Specifically, both the ALJ and the VE recognized and acknowledged that Adams' fifteen-pound lifting restriction differed from the definition of light work (which has a twenty-pound lifting restriction). (Tr. 62; *see also* 20 C.F.R. §404.1567(b)). To resolve this conflict, the ALJ specifically asked the VE whether the light jobs she identified – silver wrapper, tagger, fruit cutter, and stenciler – could be performed by an individual with a fifteen-pound lifting restriction. (Tr. 62). The VE confirmed that they could. (*Id.*). Thus, the ALJ obtained a reasonable explanation from the VE for any conflict between her testimony and the DOT and, thereafter, adequately resolved any such conflict. As such, the ALJ did not err in relying on the

VE's testimony in concluding that Adams is not disabled.

### 2. The ALJ Adequately Considered Adams' Obesity

Adams next argues that the ALJ did not properly consider the effects of her obesity. (Doc. #15 at 9-11). SSR 02-1p provides guidance for evaluating the impact of obesity on other physical and mental conditions. *See Soc. Sec. Rul. 02-1p*, 2000 WL 628049 (Sept. 12, 2002). It recognizes obesity as "a risk factor" that increases an individual's chances of developing impairments and notes that obesity often complicates chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems. *Id.* at *3. However, SSR 02-1p does not mandate a particular mode of analysis for an obese claimant. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006). Rather, the Sixth Circuit has held that compliance with SSR 02-1p only requires demonstration that the ALJ "considered" obesity. *See Dorrough v. Comm'r of Soc. Sec.*, 2012 WL 4513624, at *9 (E.D. Mich. Aug. 10, 2012). Indeed, the ALJ's "findings need not contain an explicit reference to the claimant's obesity if the decision as a whole appears to have adopted limitations resulting from the condition." *Id.* (citing *Coldiron v. Comm'r of Soc. Sec.*, 2010 WL 3199693, at *7 (6th Cir. 2010) and *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)).

In this case, it is clear that the ALJ considered the effects of Adams' obesity. As an initial matter, the ALJ specifically found that Adams' obesity is a severe impairment. (Tr. 27). In addition, here, as in *Bledsoe*, the ALJ explicitly mentioned Adams' obesity when he analyzed the medical records and acknowledged Dr. Lazzara's report that she breathed easily "despite her obesity." (Tr. 32, 346). In addition, in questioning the VE, the ALJ asked whether work existed for a hypothetical individual who could not climb ladders, ropes, or scaffolds and expressly noted that these limitations were imposed, in part, to accommodate Adams' obesity. (Tr. 61).

13

The ALJ then incorporated these limitations into his RFC finding. (Tr. 30). Adams points to no evidence in the record to support her claim that she was further limited by her obesity than the ALJ found. Thus, where the ALJ expressly considered the effects of Adams' obesity and included particular limitations in the RFC based on this condition, Adams has not identified error warranting remand.

### 3. Adams is Not Entitled to a Sentence Six Remand

Adams also argues that, pursuant to sentence six of 42 U.S.C. §405(g), the Court should remand the case to the ALJ for consideration of the results of a January 2013 MRI, which allegedly show that her back impairment is more disabling than determined by the ALJ. (Doc. #15 at 11-13). Remand to consider additional evidence is appropriate only when the evidence is new and material, and good cause is shown as to why it was not presented at the prior proceeding. *See* 42 U.S.C. §405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Here, the medical records at issue reflect the results of a lumbar spine MRI performed on January 18, 2013. Thus, the records can be considered "new" evidence, as they did not exist at the time of the ALJ's December 10, 2012 decision. (Doc. #15 at Ex. A). However, even if Adams could establish "good cause" for her failure to submit these records sooner,[4] she has

---

[4] "Good cause" requires the claimant to demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. As this Court recently recognized, "'Good cause' is *not* established solely because the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a 'harder line' on the good cause test." *Richardson v. Comm'r of Soc. Sec.*, 2012 WL 4210619, at *4 (E.D. Mich. Aug. 27, 2012) (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)) (emphasis in original). A plaintiff attempting to introduce new evidence "must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision." *Richardson*, 2012 WL 4210619, at *4. Here, Adams has not offered *any* explanation for why she did not seek and obtain an MRI prior to the ALJ's decision. Rather, in

failed to demonstrate that these records are "material."

Courts have held that additional evidence is material only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). In this case, Adams has failed to establish that the January 2013 MRI is "material" under these standards. Adams asserts that this MRI demonstrates "significant changes from [her] previously most recent MRI conducted in 2008." (Doc. #15 at 11-12). Specifically, the January 2013 MRI shows: mild neural foraminal stenosis secondary to shallow disc bulge and facet degeneration at L3-L4; moderate neural foraminal stenosis secondary to disc bulge with central annual tear and facet degeneration at L4-L5; moderate to severe neural foraminal stenosis secondary to disc bulge with central disc protrusion and facet degeneration at L5-S1; and central disc protrusion abutting the S1 nerve roots. (*Id.* at Ex. A). Thus, the January 2013 MRI results certainly suggest that Adams' back problems may have worsened since 2008; however, Adams has not shown a reasonable probability that the Commissioner would have found her disabled if presented with this additional evidence.

The ALJ did not base his decision solely on the results of Adams' 2008 MRI. Rather, he also considered the fact that she sought no medical treatment for her back between December

---

her reply brief, she argues that good cause exists because the records at issue were "developed in the course of continued medical treatment and not solely for the purpose of proving disability." (Doc. #21 at 4 (citing *Sprowles v. Astrue*, 2011 WL 5008344 (W.D. Ky. Sept. 16, 2011)). As an initial matter, the Court notes that the *Sprowles* decision to which Adams cites was a report and recommendation issued by the magistrate judge, which subsequently was rejected in relevant part by the district court. *See Sprowles v. Astrue*, 2011 WL 5008247 (W.D. Ky. Oct. 20, 2011). Moreover, it appears that the MRI at issue was ordered by Dr. Fe Quines (Doc. #15 at Ex. A), and it is not at all clear from the record that Dr. Quines was one of Adams' treating physicians, such that the MRI was obtained "in the course of continued medical treatment." Regardless, however, the Court need not resolve the "good cause" issue, as Adams has not established that the January 2013 MRI results were "material."

2008 and August 2012. (Tr. 31, 35). In addition, the ALJ considered the fact that, in August 2012, Adams' primary care physician, Dr. Ferreira, opined that her "chronic back pain," "acute lumbar strain," and "deg arthritis" required nothing more than a fifteen-pound lifting restriction, and he did not prescribe anything stronger than Motrin. (Tr. 31, 367, 369). In addition, the ALJ considered statements made by Adams to the consultative physical examiner, Dr. Lazzara, in April 2012, that "she really ha[d] not had any treatment" for her back pain in the past eight years. (Tr. 31, 345). The ALJ further noted that Dr. Lazzara found that Adams had only mild difficulty performing orthopedic maneuvers due to pain and that her physical impairments were "minimal to mild." (Tr. 31-32, 349). All of these facts suggest that the results of the January 2013 MRI would not have altered the ALJ's decision.[5]

Because Adams has not established a reasonable probability that the Commissioner would have reached a different conclusion on the issue of disability if presented with the new evidence she is not entitled to a sentence six remand.

In sum, based on the above analysis and the Court's detailed review of the record, it finds that the ALJ's decision is supported by substantial evidence and should be affirmed.

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [19] be GRANTED, Adams' Motion for Summary Judgment [15] be DENIED, and the ALJ's decision be AFFIRMED.

---

[5] Adams further argues that the January 2013 MRI results were material because they demonstrate "nerve root contact, indicating that the adjudicator would have given further consideration to Listing Level 1.04." (Doc. #15 at 12-13). However, Listing 1.04A requires nerve root compression, and the MRI results indicate only that a disc protrusion "*abuts* the S1 nerve roots," not that there is evidence of nerve root *compression*. Moreover, even if there was nerve root compression, there is no evidence of a positive straight-leg raising test, which also is required in order to satisfy Listing 1.04A.

16

Dated: January 29, 2014          s/David R. Grand
Ann Arbor, Michigan          DAVID R. GRAND
         United States Magistrate Judge

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 29, 2014.

         s/Felicia M. Moses
         FELICIA M. MOSES
         Case Manager